Take your time settling in. Our next case is number 18-10579, Alex Tribue v. United States. Whenever you're ready, Mr. Hahn. Good morning, and may it please the Court. The heart of this case is about whether this Court should apply the procedural rules regarding forfeiture of claims on collateral review to the government and defendants equally. Here, the PSR relied on only three, and the District Court and the government clearly relied on only three convictions to enhance Mr. Tribue's sentence under the ACCA. Two for delivery of cocaine, and one for fleeing and attempting to elude. Then, for the first time on collateral review, the government wanted to rely on another conviction, which was in another section of the PSR and mislabeled solicitation to purchase cocaine. Before you go to the 2255, in the original sentencing proceeding, there was no objection by the defendant to those three other than the relevant conduct issue. Is that correct? That's correct, Your Honor. Okay, and so your rule would require the government to take every conviction and show that they all were predicate offenses in the trial court. When there's no objection by the defendant, nothing's raised, and I'm not saying the defendant should have objected. He couldn't anticipate Johnson, so I don't think he's waived it, but there's no objection. So, what you're saying is the government and the District Court would have to put in the separate documents for all of those convictions or be barred from later on. That's really what you're saying, because they didn't do it, even though he didn't object, they can't use it now. Help me with that. I have a couple of responses to that, Your Honor. Yes, it's true, Mr. Tribby did not object to the reliance on this mislabeled conviction, but it was the government's burden at sentencing to establish this conviction. And to the extent the court's concerned, well, the government's going to have to now state every conviction it's relying on at sentencing, well, that's not— Not just state it. They're going to have to get the Shepard documents and put them in. Unless the defendant admits it, of course, by not objecting to it, but—  No, no, no, I'm saying hypothetically in response to Judge Hull's question, she goes, the government would have to admit Shepard documents to prove a conviction unless the defendant didn't object to it. But the point I'm making is it's not unusual at all for the government to rely on more than three convictions. If you look at this court's case law since the enactment of the Armed Career Criminal Act, the government routinely relies on more than three convictions. And a defendant has a due process right to know, to notice, and an opportunity to be heard about what convictions are being relied on to enhance his sentence under the Armed Career Criminal Act. And it's the government's burden to give him that notice. So I don't think it's that much of a burden for the government to say— Why is he not getting that notice when he then, later on, they agreed that fleeing and looting doesn't qualify? And so then they gave him a notice in the 2255, and he had a full opportunity. Let me ask that first. Did he have a full opportunity in the 2255 to challenge whether or not that—I think it's a 2005 delivery. 2007, Your Honor. You're correct. I'm wrong. He had a full opportunity in the 2255 to challenge whether or not that 2007 delivery cocaine qualified. Is that correct? That's correct, Your Honor. Okay. But to respond to that point, at that point it was too little too late. At that point, if we're going to apply the procedural rules about forfeiture of claims equally to the government the way we've applied them to the defendant, at that point— especially when the burden has shifted now to the defendant in 2255, they forfeited their right to rely on that. Do you agree we basically don't have a case in point here? We have Canty. I've been on the panel on all of these. I was on the panel on Canty, and the government—the defendant objected in the trial court. The government said we disclaim explicitly reliance on anything else. And so Canty was easy, frankly. We said they wiped it. They couldn't go back after Johnson and pick up another one. We also had—there's another case. Bryant? Bryant, yep. Well, I got overruled in Bryant v. Bryant, but that's okay. But I did write Bryant, and there was a disclaimer there. I mean, those are facts. So we don't really have a case published that's like this case where there's no objection whatsoever. A couple points, Your Honor. Do we have a case like that? Help me with that. Not on point, but I would say the best case from this circuit that helps us in this case is Martinez. Martinez, which addressed the mandate statute, 28 U.S.C. 2106, which states this court has discretion to fashion a mandate that is just under the circumstances. Well, what is just under the circumstances? Sometimes, this court has said on direct appeal, whether a defendant makes an objection is a significant factor. But here on collateral, there's two things that make what's just under the circumstances lean in Mr. Tribune's favor. One, we're on collateral review, and if we're going to apply procedural rules fairly to both sides, the government needs to give a sufficient reason for forfeiting its right to timely rely on this conviction, which it has not done and cannot do. Second— Well, I'm looking at Martinez. We allowed the remand to bring up the new case, I mean the new conviction on remand in Martinez. Well, I understand the facts of that case is different. No, but you cited Martinez. I'm going to go to Martinez. We said there were powerful reasons to allow the government to present additional evidence on remand to support the sentencing enhancement, and we allowed it to go forward for them to try to bring up another one because there had been no objection through the initial proceedings. Right, and I understand that, Your Honor. Okay. I cite Martinez for the fact that I'm recognizing that the mandate statute gives this court discretion to do what's just under the circumstances. That's what the mandate statute is about. I understand in Martinez it was just to give this government a second bite at the apple, but we're looking at the facts here. Aren't you getting a second bite at the apple through Johnson? I'm glad you brought that up, Your Honor, because we're raising two very different claims here. No, no. You did not object to this conviction, which is now out under the residual bar, right? And a change in law now lets you rely on that conviction being thrown out, although you didn't raise any contemporaneous objections. So you are operating in a hypothetical world that didn't exist at the time that your client was sentenced. Those are governments. I've written one of those no second bite at the apple cases where the government had a sentencing enhancement, the government had to present evidence, didn't present enough, and we thought, the panel thought, you shouldn't go back and get a second shot if it was your burden of proof to put on evidence and you didn't do it. That's it. You're done. This seems to me very, very different because the conviction is there in the PSI. It's not contested or disputed. The only thing is it's legal effect. Let me ask you one other question, though. That was more of a comment than a question. Let me ask you this question. Why doesn't the concurrent sentence doctrine eliminate your claim in this case? And I've looked at the PSI, and the PSI, when it groups, it puts the cocaine conviction up top, and that's the conviction that drives everything. And so no matter what happens on the sentence for the felon in possession count, the drug guideline is going to remain exactly the same. And since you're not looking to set aside the felon in conviction, felon in possession conviction, just reduce the sentence, the concurrent sentence doctrine seems to knock you completely out. You've said a lot of things, Your Honor, and I'd like to address all of them. So starting from your last point, the concurrent sentence doctrine, under 2255B, there are two remedies that really are at issue here under the statute, correction and resentencing. Under last year's decision in United States v. Jasmine Brown, in certain instances, defendants have a constitutional right to a resentencing. And so Mr. Tribune may have a right to a resentencing, but even if it's between those two remedies under the statute, the district court at least has the discretion to choose which one it's going to employ. And Mr. Tribune at least has the right to argue that his sentences were interdependent, such that the removal of this label as an armchair criminal and the removal of this designation of a fleeing and looting conviction as a violent felony may affect the way the district court believes what is an appropriate sentence in his case. So I don't think the concurrent sentence doctrine – The conviction still stands. The conviction still stands, but I think that under 2255B, at a minimum, you would have the opportunity to argue the sentencing package doctrine should be employed here because the sentences are interdependent. This is not a sentencing package case. Well, under 2255B, there's two remedies. There's resentencing or correction. And sometimes you have a right to resentencing, sometimes a discretionary matter by the district court judge. To the extent it's a discretionary matter – You want the whole sentence reopened. I think Mr. Tribune should have the right to argue that the district court – Yes, we want that. The whole sentence reopened. Yes, Your Honor. Otherwise, the concurrent sentence doctrine bars you. Or at a minimum, you'd get a correction where only the armchair criminal count would be reduced to the proper statutory maximum. That's the sort of issue that the concurrent sentence doctrine bars. The concurrent sentence doctrine would – It wouldn't make any difference to your ultimate sentence. It would not make a difference to the ultimate sentence. And I see I have an expiring time, so I'd like to – Let me go on the concurrent sentence doctrine because I did an opinion in one of these Johnson cases saying, Look, he's got a mandatory life on this other count. We're done. Concurrent sentence. We didn't try to decide whether the predicate offense on the separate count qualified. I can't remember the name of the case. But then we had another colleague right after that limit that case to where it's a mandatory life sentence. It's N. Ray Williams. I think you all know this better than I do. You're here all the time. Is it N. Ray Williams? I believe so, Your Honor. Yes. And N. Ray Williams said, Oh, no. We limit that case to only where there's a mandatory life sentence because there are always collateral consequences. They're looking at, you know, what other things you have, when they're placing you, where they're housing you, whatever they're doing. And so your position has always been this is not barred by the concurrent sentence doctrine. I think that's what you all argue. Absolutely. And successfully in quite a few cases. Absolutely, Your Honor. In this Johnson context. Yes. I see my time has expired. I'm going to keep you for one more second with the permission of the panel. What standard of review do you say we should apply to the Beaman question about the district court's factual conclusion about whether a defendant was sentenced under the residual clause? I think that the factual matters have to be reviewed under a clearly erroneous standard, and the legal questions have to be reviewed de novo. Thank you. All right. Thank you very much, Mr. Kahn. Okay. Please, the Court. Roberta Bodner for the United States. This defendant did not just fail to object. He stipulated in his sentencing memorandum at Docket 66 that the ACCA applied to him that he was subject to a 15-year sentence, and he argued to the court that the only way he could be sentenced for less than 15 years is if the court gave him an unusually large reduction for his substantial assistance. The United States does not – But that's at a time when the world was legally very different. Yes. Everybody thought that that conviction would count. That's right, and that is why the United States did not argue that his stipulation was a waiver in and of itself that would preclude a Johnson review. We did not. But we did not waive anything by accepting his stipulation that the ACCA applied. The criminal rules don't require that. If the criminal rules required the United States to prove multiple alternative grounds for every sentencing fact of consequence, even in the face of a defendant's stipulation, then every single sentencing would be a trial. The rules don't require that. The court is only required under Rule 32 to make factual findings and rulings based on disputed matters, and this was not a matter in dispute. This defendant had stipulated. The ACCA enhancement is not a matter of prosecutorial discretion. Congress wrote it to be self-executing. This court's cases interpreting it have said that unequivocally. Yes, the defendant has a due process right to notice and an opportunity to be heard to challenge those convictions. And as Judge Hull pointed out, he had that notice and an opportunity to be heard with respect to this third drug conviction in his Section 2255 proceeding. Although he had admitted the existence of the conviction itself by failing to object to the PSR, that is clear under this court's precedent, and Bennett, Beckles, Wade, and a whole bunch of others. He'd admitted the existence of that conviction, but if he'd wanted to come back and say, you know what, that conviction doesn't count because there was a Gideon violation, I wasn't counseled, he would have been free to do that. If he wanted to come back and say that conviction wasn't a serious drug offense, he could have come back and done that. He could have said that it wasn't a separate conviction from the offensive conviction, the way he initially attempted to challenge one of his serious drug offenses and then withdrew the challenge. He still had notice and an opportunity to be heard, but what is absolutely clear is that the United States did not waive anything. Canty and Bryant were both cases in which the defendant objected at the original sentencing, and in response to those objections, the prosecutor stood up and affirmatively disclaimed reliance on certain convictions. In Bryant, the prosecutor did it at length because the court went one by one by one down every conviction in the PSR, including a bunch of misdemeanors, and said this doesn't qualify, that doesn't qualify, the other one doesn't qualify. Those are affirmative waiver cases. Canty and Bryant make sense in the construct of this court's plain error case law, in the context of collateral review, only if you view them as affirmative waivers of the kind of waiver that's involved in an invited error case. If you look at Phillips, where it talks about an affirmative waiver and it cites invited error cases, and you look at the cases that Phillips cites, you understand that when a district court makes a ruling based on a waiver by a party that the party invites, this court can affirm even an illegal sentence, because that's a waiver. The district court has acted in reliance on an affirmative disclaimer. Some illegal sentences, not all. And the reason that the United States has not argued a waiver in this and many other cases is that when it comes to a Johnson claim, we have always believed that if the defendant no longer qualifies, then he should get review. But we don't waive by not objecting to his stipulation. That makes no sense at all. What the defendant wants in this case is to turn the United States' acceptance of that stipulation into a waiver, and it simply is not one. Now, I'd like to talk about Martinez for a minute because the court questioned it and the defendant brought it up as a case that's favorable to him, and I'd like to point out that Martinez actually was direct review of a preserved error. In Martinez, it says that the defendant's objection was not clear. But it was a preserved error. He actually did object. This is collateral review of a procedurally defaulted claim. On collateral review, the defendant's burden is much higher because collateral review is not a substitute for direct appeal. So Martinez does not go far enough for this context because this defendant is not on direct appeal, and he has forfeited himself this objection. It's fair for the burden to be on him. The cause and prejudice issues that you raised in your brief really meld with the merits issues in the case, right? Because if – think of a different scenario where the only – there were only three convictions, and it's clear that two of them are now gone because of the residual clause. Johnson provides cause. Yes. And you can show the ultimate prejudice because Johnson knocks those two out, and the person is no longer a knockoff offender. So this is the sort of case where cause and prejudice for a default sort of meld and combine with the ultimate merits issue. It appears to, and there's a couple of things about what you just said that I'd like to comment. First, for purposes of our discussion here, we're not talking about cause, and so we don't have to decide it for this case. I don't think this court has decided in a published opinion whether Johnson actually has established cause. And we've made arguments in this case below, I believe, and in other cases that Johnson actually does not establish cause because the Supreme Court has had so many of the vagueness challenges on its docket for so many years that it was on everyone's radar, and it's not that novel. That entirely aside, yes, in a situation where a defendant has only two qualifying convictions, he would be able to show prejudice. And so there is some merging of the cause and prejudice standard and the examination of the entire record, but what this defendant wants is for us not to be able to look at any of the rest of the record, and that's not appropriate for a whole bunch of reasons, but one fundamental one is that paragraph 41 of the PSR did not say that the defendant has only three qualifying convictions. It said he has at least three. And paragraph 41 of the PSR did not say that the United States is prepared to prove the following three. It said the following three are the ones that the probation office has relied on in preparing this report. Nothing in that PSR, nothing in the rules of criminal procedure created an obligation or even an incentive for the United States to object. All right. It seems to me that that argument makes a lot of sense given the state of the law at the time. If you had a third conviction where everything was sort of up in the air, you had nothing precedential in the Eleventh Circuit, and it was unclear whether conviction number three would have counted or not counted, it may be a different scenario, but given the state of the law at the time, I don't know what else the government can be expected to do. Well, certainly in this situation, we didn't do anything wrong, and we did not waive anything. But even in a situation, Your Honor, when the defendant has—perhaps the PSR had listed three drug convictions, and the defendant stipulated, as this defendant did here, and then later came back and said XYZ conviction wasn't counseled, and he tried to excuse his procedural default from ineffective assistance of counsel, that could happen because ineffective assistance of counsel excuses a procedural default. We would not be held to have waived reliance on other drug convictions in the PSR because this is a self-executing statute, and had the defendant objected, even if we had believed that other convictions ought not to qualify for some fairness reason, which is what happened in Symington, even if we thought that the district court still would be obligated to apply the ACCA if the defendant qualified. So in the face of an objection, our obligation as prosecutors and the court's obligation at sentencing would be to examine the rest of the criminal history to see if something else qualified. If we didn't have the Shepard documents, then so be it. But we have a due process right, too. Do you think it's possible, given what you just stated, for the government to waive reliance on any conviction? Yes, we did in Bryant and Canty, and that's what this court held. So you're not arguing with that standard? No, I'm saying that Bryant and Canty are explicable only if you view them on their facts and put them in the category of an invited error, because we know that when an error is invited, this court can affirm. What Phillips talks about when it talks about a waiver is that a waiver is a form of consent. How does that mesh with your argument that the ACCA is self-executing? Well, Bryant and Canty are both ACCA cases. When we went to court on those cases and the district court was asking whether this defendant qualified, we invited the error, and this court has held that in that narrow context of an invited error, even an illegal sentence may be affirmed. If you look at Phillips, it cites a case called Love, which is one of those cases where a defendant went in, I believe it was in a sex case, and said he was subject to a life maximum of supervised release, and it turned out he actually wasn't. That also is an illegal sentence, right? It exceeds the statutory maximum. But that error was invited because that's what the defendant asked for. That's a really, really narrow circumstance. To transpose that into a situation where the defendant never objected is inconsistent with every plain error case in this circuit because the defendant's burden on plain error review is greater than on collateral review. The scenario you're describing is that this case had played out the way that it did at the beginning. The district judge wasn't sort of sure about conviction number three and said he wasn't going to rely on it. He turned to conviction number four, asked you the government about conviction number four, and you said conviction number four does not count as a NACA predicate. We're not relying on it, Judge. We're asking you to rule on conviction number three as the third predicate. That's Bryant and Canty. That's the other scenario. That's Bryant and Canty. But you can't extend Bryant and Canty to a case where the defendant procedurally defaulted his claim by never objecting, and we're now on collateral review. And we probably have several non-published cases that say there was no waiver. We just haven't published in this type of situation. Right, and I do know that there are lots of these cases. I know Rose is one of them. Yes, Your Honor. Yeah, that does like this. But in any event, let me ask you this. You mentioned procedural default. Yes. I didn't think the government argued procedural default in the 2255. Yes, Your Honor, we did. You did? Yes, ma'am. Okay. But I agree with you, Your Honor. I think it meshes, and in Rose, which is also non-published, we said it meshes. Right. It's causing prejudice. So we can bypass that issue. Well, on appeal, have you contended we shouldn't even listen to his argument? No, Your Honor. Are you invoking procedural default on appeal? We are, Your Honor. Okay. And we're saying that the procedural default puts the burden on him to prove substantial prejudice and that when there is a fourth qualifying conviction out there, he has failed to meet his burden. I can avoid all of that if there's nothing wrong with the fourth conviction. I don't have to get into all that. Well, no, except for, you'll notice that Rose talks about this court's authority under 2106 to describe the scope of the mandate. Rose is non-published, though. I understand that. But Rose and Martinez are both relying on the inherent authority in that statute of the court to describe the scope of the mandate. The district court, likewise, has broad authority in the 2255. But what really is operative here and why Martinez does not go far enough is because Martinez is a published case on direct review of a preserved error. And that's not the same as collateral review of a defaulted claim. They have to be different. So to say that it's discretionary, I don't believe that's enough. In a 2255 proceeding, the United States has an absolute right to present additional evidence in support of a conviction that is final. This is a final conviction. That matters. And a 2255 is inherently an evidentiary proceeding. We provide additional evidence in 2255 cases all of the time. I'd use as an example the actual innocence context. When a defendant claims actual innocence to excuse a procedural default, the United States is entitled to offer additional evidence, even if it wasn't offered at trial, even if it wasn't offered during the guilty plea, in order to rebut the claim. That's what the proceeding is designed to do. And to just hold that it's a matter of discretion does not go far enough because it does not acknowledge the distinction between collateral review and direct review. All right, Ms. Quadron, thank you very much. I'll ask the court to affirm. Thank you. So I'd like to start off by just talking about the fourth conviction at sentencing. It was mislabeled, and no one objected to that. So all the parties agreed it was a conviction for solicitation to purchase cocaine and not a third delivery conviction. No one objected to that. And the government should have known that it was mislabeled because they were relying on this conviction for other purposes, like establishing the elements of the offense and assessing criminal history points. So the government really should have known it was mislabeled, and it should have said something, and it should have said it's a fourth qualifying conviction. It didn't do any of those things. That would invert the burden of proof. I said Mr. Tribune has no reason. No, no, if the government's relying it for some purposes, the burden's not inverted. If the government is asserting it for some reason, and you think that there's a problem with the underlying reason, it's not a burden shifting. It's you saying the government can't rely on this conviction for this purpose because. But the other purpose is it was relying on to show it was a felony or to show how long he was in sentence for this conviction. The mislabeling didn't matter. Oh, okay. How about Ms. Bodnar's argument that your waiver contention doesn't make sense given Mr. Tribune's statement in the sentencing memorandum that he was an ACCA offender? So if we're going to apply the rules fairly on collateral review, and I think it's important that we're not – we're raising different arguments. So defendants have arguments they raise all the time on collateral review, meritorious arguments that don't see the light of day because they didn't do what they were supposed to do at the appropriate procedural juncture. That's what's going on here under the government. I mean I know you're advocating strongly on behalf of your client as you should, but if the defendant who has no burden with regards to an ACCA enhancement, that is something that has to be proven. It is self-executing in a way the way that Ms. Bodnar described, but the government has the burden of proving that there were these convictions if it's contested. And the PSR lists X number of convictions, and the defendant says, I agree that those exist, I agree those are mine, and I agree those make me an ACCA offender. Why should the government have to do anything else? So ACCA is self-executing as a matter of statute, but the cases she's relying on for that proposition – Forget the cases. There's a due process right here. I have a right to notice and an opportunity to be heard at the time of sentencing when the burden is on the government to what is being relied on. If you stipulate to what's being relied on, why does the government as a practical matter need to do anything? We never stipulated that they relied on this. What did you say in your sentencing memorandum? Ms. Bodnar says that there was an acknowledgment, whether you call it a stipulation, a concession, whatever. I don't want to put a label on it. We stipulated we were ACCA for the reasons set forth in the PSR, but not because this fourth conviction. Agreed. I completely agree with that. You did not stipulate anything about the fourth conviction. I completely agree with that. But if you agree that what the PSR sets out is correct, why is the government required to do anything further? As a matter of due process, we have a right to know what's being relied on. The Fourth Circuit recognized this point in Hodge, and it's not unusual and it's very common for the government to take a belt and suspenders approach and say, this person has four, five, six qualifying convictions. Only three matter. Same thing happens at trial. They don't rely only on the minimum amount of evidence necessary to sustain a conviction. That they chose to rely on three here, they should have to live with that choice unless they can give a good reason for forfeiting their right to rely on this conviction. And they can't because they were able to rely on this conviction and it was common practice at the time. I see my time is expiring if I can briefly conclude. So the government is now required in every ACCA case to go because it's unknown what the state of the law is going to be in future years and whether there will be another Johnson type case. You are required, the government is required, in order to preserve its rights to rely on every single conviction and prove up every single conviction, even though the law is clear that X number of convictions qualify at the time. I think they need to say what they're going to rely on to satisfy the defendant's due process rights. But I don't think that's an onerous burden, especially given that most of these offenses have already been resolved at this time. No, the problem is that they have been resolved and then the law changes and then everybody is sort of turned around because – so think about a sentencing tomorrow. A sentencing tomorrow and a district judge says, well, I've got this case from the 11th Circuit. I've got this case. I've got this case. All three of them count. And it turns out that two years later, one of those cases changes and the law changes and that conviction no longer counts. So now the government had to rely on the other two or three at the same time to preserve its arguments? I don't think that would be an onerous burden for the government. They do it in many cases. And if anything, I think it would be more efficient for when cases come to this court on direct or penal collateral review to have a more meaningful record to review. So I see I'm well on my time. It's okay. You can finish. I'll briefly conclude. The government was given a full and fair opportunity to assemble whatever support it had to sustain this enhancement at the time of sentencing when the burden was on it. Nothing precluded the government from saying to the sentencing court or to probation, hey, there's this enslaved conviction. It's actually a fourth qualifying conviction. We're also relying on that. It's the same as the other two. Having failed to seize that opportunity, it should be precluded from relying on that conviction on collateral review. So we would simply and respectfully ask that you vacate the district court's order and remand for its directions to grant Mr. Kribbe's motion. Thank you very much, Mr. Khan. Thank you very much, Ms. Bodnar.